UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAPORT GLOBAL HOLDINGS LLC,

                    Petitioner,

              – against –

PETAQUILLA MINERALS LTD.,

                   Respondent.

**<u>ORDER</u>**

19 Civ. 9347 (ER)

Ramos, D.J.:

       Seaport Global Holdings LLC ("Seaport") petitions the Court to confirm an arbitration award against Petaquilla Minerals Ltd. ("PTQ") pursuant to § 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9, Chapter 2 of the FAA, 9 U.S.C. § 291 *et seq.*, and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.  Doc. 1.  Seaport also petitions the Court for attorney's fees and costs incurred in connection with the instant motion and for interest accruing from the date of the final award.  Doc. 11.  For the reasons stated below, the petitioners' motion is GRANTED in part and DENIED in part.

I.     **BACKGROUND**

     **A.  Factual Background**

       Seaport, a limited liability company organized under the laws of the State of Delaware and with its principal place of business in New York, New York, is an investment banking firm specializing in the energy, natural resources, and mining sectors.  Doc. 1 ¶¶ 1, 7.  PTQ, a mining company, is a British Columbia corporation, with some of its operations in the Petaquilla Region of Panama.  *Id.* ¶¶ 2, 7.  In March 2012, the parties entered into an agreement whereby Seaport's predecessor, Global Hunter Securities LLC ("GHS"), would serve as PTQ's non-exclusive

advisor and exclusive placement agent to raise $150 million through a bond offering.  *Id.* ¶¶ 3, 8.

Pursuant to this agreement, PTQ was to reimburse GHS for expenses incurred in connection with

its services, regardless of whether the anticipated sale of bonds closed.  *Id.* ¶ 9.  On September 6,

2012, the parties extended the term of the agreement to March 2013.  *Id.* ¶ 10.  The agreement

subsequently terminated on its own terms.  *Id.* ¶ 11.  On March 28, 2013, the parties executed a

new engagement agreement (the "Engagement Agreement") in continuation of their efforts

regarding a bond offering.  *Id*.  This agreement mirrored the provisions of the initial agreement,

with some exceptions.  *Id.*

The Engagement Agreement, like its predecessor, contained an arbitration clause, which

provided that:

> This agreement is governed by the laws of the State of New York . . . and
> will be binding upon and inure to the benefit of [PTQ] and GHS and their
> respective successors and assigns.  [PTQ] and GHS hereby agree that any
> dispute, controversy or claim arising out of or relating to this agreement will
> be settled by mandatory, confidential, binding arbitration before a single ar-
> bitrator in New York City in accordance with the American Arbitration As-
> sociation ("AAA") Commercial Arbitration Rules then in effect.  The deci-
> sion of the arbitrator will be final, binding, and non-appealable and may be
> enforced in the courts of the State of New York and any other court of com-
> petent jurisdiction.  Any Party seeking to institute an arbitration proceeding
> . . . pursuant to this Section 11 shall first give written notice . . . to the other
> party setting forth the claim and provide the other party an opportunity to
> cure.  If the subject of the claim has not been resolved to the mutual satis-
> faction of the parties within thirty (30) days following the delivery of the
> Arbitration Notice, the Petitioning Party may petition the AAA to com-
> mence an arbitration proceeding.

*Id.* ¶ 12; Doc. 13, Ex. B at 5.  The arbitration clause required the party seeking to institute an

arbitration proceeding to give written notice to the other party, and to give the other party an

opportunity to cure any defect within thirty days.  Doc. 1 ¶ 12; Doc. 13, Ex. B at 5.

2

On March 31, 2015, Seaport commenced arbitration against PTQ by filing a Demand for Arbitration with the International Centre for Dispute Resolution of the American Arbitration Association ("ICDR"), a division of the AAA.  Doc. 1 ¶ 13.  Seaport alleged that PTQ had failed to reimburse Seaport for expenses incurred under the Engagement Agreement.  Id.  PTQ answered the petition and brought counterclaims against Seaport.  Id. ¶ 14.  The parties jointly selected Steven Skulnik as the sole arbitrator, and he was formally appointed by the ICDR.  Id. ¶ 15.  The hearing spanned, in aggregate, roughly eleven calendar days, and took place both in New York City and in Panama.  Id. ¶ 16.  The parties then submitted proposed findings of fact and conclusions of law in November 2018.  Id. ¶ 17.

On January 4, 2019, the arbitrator issued a partial final award, denying all of PTQ''s counterclaims, and finding that Seaport was entitled to recover $759,956.28 USD and $64,263 CAD (Canadian Dollars) from PTQ, in full satisfaction of all claims asserted.  Id. ¶ 18.  The arbitrator instructed Seaport to submit evidence of attorney's fees and costs, for consideration in the final award.  Id. ¶ 19.  On April 22, 2019, the arbitrator rendered his final award in New York, New York, finding that Seaport was entitled to an additional $2,103,356.60 in attorney's fees and expenses, as well as to $61,269.20 for administrative fees and expenses.  Id. ¶ 20.

## B.  Procedural History

Seaport filed this petition to confirm arbitration on October 9, 2019.  Doc. 1.  PTQ was served on December 23, 2019, and its Answer was due twenty-one days thereafter.  Doc. 7.  To date, PTQ has not answered the petition.  On January 15, 2020, Seaport wrote the Court to request that its petition be deemed an unopposed motion for summary judgment, Doc. 8, and the Court granted this request, Doc. 9.  On March 3, 2020, Seaport submitted the affidavit of Christopher M. Schierloh of the law firm Casey & Barnett LLC, and the affidavit of John

Scialdone of the law firm Scialdone Law Firm, PLLC, together requesting $5,010.35 in attorney's fees and costs incurred in connection with this motion.  Doc. 11.  With these affidavits, Seaport also submitted a proposed order indicating that it sought "interest running from April 22, 2019."  Doc. 11, Ex. B.

## II.    LEGAL STANDARD

### A.  Enforcement of Foreign Arbitral Awards

Arbitral awards are not self-enforcing and must therefore be "given force and effect by being converted to judicial orders by courts."  *Power Partners MasTec, LLC v. Premier Power Renewable Energy, Inc.*, No. 14 Civ. 8420 (WHP), 2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)).  The New York Convention, codified at Chapter 2 of the FAA, governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered commercial," except when those relationships are "entirely between citizens of the United States" and are otherwise domestic in nature.  9 U.S.C. § 202; *see also Navig8 Chems. Asia PTE., Ltd. v. Crest Energy Partners, LP*, No. 15 Civ. 7639 (PAE), 2015 WL 7302267, at *2–3 (S.D.N.Y. Nov. 18, 2015).  The Second Circuit has interpreted this provision to mean that the New York Convention applies to agreements to arbitrate that "involv[e] parties domiciled or having their principal place of business outside [the United States]."  *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (internal quotation marks and citation omitted).  Because PTQ is a British Columbia corporation, the New York Convention applies.

Where, as here, the arbitration award was rendered in the United States, the New York Convention "allow[s] a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate that arbitral award."  *Id.* at 21; *see also id.* at 23 ("From the plain language and history of the Convention, it

4

is thus apparent that a party may seek to vacate or set aside an award in the state in which, or under the law of which, the award is rendered."). The FAA provides a "'streamlined' process for a party seeking 'a judicial decree confirming an award.'" *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 682 (2008)). Confirmation of an arbitral award normally takes the form of a summary proceeding that converts a final arbitration award into a judgment of the court. *D.H. Blair & Co.*, 462 F.3d at 110 (2d Cir. 2006). The court is required to grant the award unless it is vacated, modified, or corrected. *Id.* (quoting 9 U.S.C. § 9). An application for a judicial decree confirming an award receives "streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." *Hall St. Assocs., L.L.C.*, 552 U.S. at 582 (2008).

In order to promote the goals of arbitration, which consist of "settling disputes efficiently and avoiding long and expensive litigation," arbitration awards "are subject to very limited review." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (internal punctuation and quotation marks omitted) (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993)). It is not necessary that the arbitrator explain the rationale for the award; the award "should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted) (quoting *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). In short, as long as there is "a barely colorable justification for the outcome reached," a court should enforce an arbitration award — even if it disagrees with it on the merits. *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (internal quotation marks and citation omitted).

### B.  Summary Judgment Standard

An unanswered petition to confirm an arbitration award is to be treated "as an unopposed motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 110; *see also Trs. for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Earth Constr. Corp.*, No. 15 Civ. 3967 (RA), 2016 WL 1064625, at *3 (S.D.N.Y. Mar. 15, 2016) ("A district court should treat an unanswered petition to confirm or vacate as an unopposed motion for summary judgment and base its judgment on the record." (internal quotation marks and citation omitted)).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*

Even if a motion for summary judgment is unopposed, courts are required to "review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).  If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998).  The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v.*

*Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

## III.   DISCUSSION

The Court has conducted a limited review of the arbitration agreement entered into by the parties and the ensuing arbitration award.  Section 11 of the Engagement Agreement provides that any dispute arising from the agreement will be settled by mandatory and binding arbitration and shall be governed by New York law.  Doc. 13, Ex. B at 5.  After considering both parties' submissions and extensive evidence, including witness testimony, the arbitrator found that Seaport exercised "its best efforts regarding the bond offering," that it was not at fault for the bond offering's failure, and that "PTQ unconditionally undertook to reimburse [Seaport] its expenses regardless the success of the offering."  Doc. 1, Ex. B at 22.  With regards to PTQ's counterclaims, the arbitrator denied them in their entirety, finding "absence of any credible evidence to support any of PTQ's theories."  *Id.* at 23.  There is no indication that this decision was made arbitrarily, that it exceeded the arbitrator's jurisdiction under the agreement, or that it was contrary to law.  *See Trs. of New York City Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12 Civ. 005 (JMF), 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012) ("Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party.").

Accordingly, the Court finds that based on the record provided, together with the appropriate narrow level of review, there is no disputed material issue of fact and the arbitration award should be confirmed.  *See Landy*, 954 F.2d at 797 ("[A]n arbitration award should be

enforced . . . if there is 'a barely colorable justification for the outcome reached.'" (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978))).

### A.  Attorney's Fees, Costs, and Post-Judgment Interest

Petitioners also seek to recover an award of attorney's fees and costs for the instant motion to confirm, as well as interest.

The Court agrees that the award of attorney's fees in connection with this motion is merited.  "[C]ourts have routinely awarded attorney[']s fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Trs. of New York City Dist. Council of Carpenters Pension Fund v. Alliance Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (quoting *Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases)).  Here, PTQ did not abide by the arbitration award and failed to timely participate in this action.  As such, Seaport seeks $5,010.35 in attorney's fees and costs.  However, Seaport has failed to provide records supporting these fees.  Without these records, the Court cannot determine if these fees and costs are reasonable.  This request is therefore denied without prejudice.

In its proposed order, Seaport also seeks "interest running from April 22, 2019."  Doc. 11, Ex. B.  However, it does not provide any support or authority for seeking pre-judgment interest; nor does it indicate the rate of pre-judgment interest it seeks.  The Court therefore also denies without prejudice Seaport's request insofar as it relates to pre-judgment interest.  As to post-judgment interest, the Court grants post-judgment interest on the full judgment amount pursuant to 28 U.S.C. § 1961(a).  *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of

post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.").

## IV.   CONCLUSION

For the reasons stated above, the petitioners' motion is GRANTED in part and DENIED in part.  The arbitration award is confirmed, and the Clerk of the Court is directed to enter judgment in favor of the petitioners in the amount of $2,972,833.31[1] pursuant to the arbitrator's final award.  This judgment shall accrue post-judgment interest as mandated in 28 U.S.C. § 1961. If Seaport chooses to pursue attorney's fees and costs in connection with this matter, as well as pre-judgment interest on the award, it must, within ten days of the entry of this Order, submit records supporting attorney's fees and costs and a short letter indicating the amount of pre-judgment interest it seeks and the basis for this amount.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 1.

It is SO ORDERED.

Dated:   May 27, 2020
         New York, New York

_____

Edgardo Ramos, U.S.D.J.

---

[1] This amount accounts for the conversion rate of $64,263 CAD on the date of filing.